IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VINCENT E. "BO" JACKSON and ELLEN COLEMAN, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) No. 05 C 3459 ) |
| THE CALIFORNIA NEWSPAPERS PARTNERSHIP, MEDIANEWS GROUP, INC., MEDIANEWS GROUP INTERACTIVE, INC., JIM MOHR, STEVE LAMBERT, and ROBERT BALZER, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Vincent "Bo" Jackson brought an action alleging defamation, invasion of privacy and intentional infliction of emotional distress against defendants The California Newspapers Partnership, MediaNews Group Inc., MediaNews Group Interactive, Inc., Jim Mohr, Steve Lambert and Robert G. Balzer. The case was originally brought in the Circuit Court of Cook County and defendants removed to this court pursuant to 28 U.S.C. §§ 1332, 1441(a), and 1446. Defendants collectively move to dismiss claims for lack of personal jurisdiction and improper venue, or, in the alternative, to transfer this case to California. For reasons set forth below, defendants' motion is granted.

## BACKGROUND

On March 24, 2005, Ellen Coleman, a registered dietician of the American Dietetic Association, and a member of the Sports, Cardiovascular and Wellness Nutritionists Dietetics Practice Group, presented a speech on diet, exercise, and the dangers of steroid use, at a forum

in Riverside, California. Mohr, sports editor for the *Inland Valley Daily Bulletin*, attended the forum and wrote an article entitled, "Forum tackles the dangers of steroid use." The article stated, in reference to Coleman, "'Bo Jackson lost his hip because of anabolic abuse,' she said, citing an example of how she personally witnessed damage on someone's life." The article was posted on the internet website *www.dailybulletin.com* on the evening of March 24, 2005, and published in the *Inland Valley Daily Bulletin* newspaper on March 25, 2005. The posting on the website sits at the center of this claim.

In a sworn affidavit, Coleman said that at the forum on March 24, 2005, she spoke on diet and steroid use, and later had a conversation with Jim Mohr. She also said that she never mentioned "Bo" Jackson in her speech or conversation with Mohr, or made the statement attributed to her in the aforementioned article. Jackson now sues for damages suffered as a result of the alleged defamation. Coleman was originally named as an additional plaintiff, but has since removed herself from this action.

The California Newspapers Partnership owns and operates the *Inland Valley Daily Bulletin*. MediaNews Group Interactive, Inc. is a wholly-owned subsidiary of MediaNews Group, Inc., and provides assistance and support for *www.dailybulletin.com*. Jim Mohr is the sports editor, Steve Lambert is the editor, and Robert G. Balzer is the publisher and chief executive officer for the *Inland Valley Daily Bulletin*.

## DISCUSSION

Defendants move to dismiss plaintiff's action for want of personal jurisdiction under FED. R. CIV. P. 12(b)(2). In considering such a motion we accept plaintiff's well-pleaded allegations as true unless controverted by defendants' affidavits, resolving any conflicts in the affidavits in favor of the plaintiff. Transcraft Corp. v. Doonan Trailer Corp., 1997 WL

733905, *1 (N.D.Ill.1997). The plaintiff has the burden of making a prima facie case for personal jurisdiction. RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir.1997). For the reasons set forth below, we find that plaintiff has not met that burden.

A federal court sitting in diversity has personal jurisdiction over a non-resident defendant only if an Illinois court would have jurisdiction. Global Relief v. New York Times Co., 2002 WL 31045394, *5 (N.D.Ill.2002). A non-resident can be sued in Illinois as long as the court's jurisdiction comports with federal and state due process requirements and the Illinois long-arm statute. Transcraft Corp., 1997 WL 733905 at *2. Because the Illinois long-arm statute authorizes jurisdiction on any basis permitted by the Illinois constitution and the Constitution of the United States (735 ILCS 5/2-209(c); Id.), we focus on whether personal jurisdiction over defendants comports with notions of due process.

We must inquire as to whether defendants have had minimum contacts with Illinois, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. and Placement, 326 U.S. 310, 316 (1945). Courts have interpreted International Shoe to require that the "defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Plaintiff argues that this court has both general and specific jurisdiction over defendants. General jurisdiction attaches to defendants domiciled in Illinois, or defendants having continuous and systematic contacts with Illinois. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984); Euromarket Designs, Inc. v. Crate & Barrel Ltd., 96 F.Supp.2d 824, 833 (N.D.Ill.2000). Plaintiff states that "[b]y utilizing technology, the

internet has now achieved the ultimate in 'continuous and systematic' commerce" (plf's resp. to defs' mot. to dismiss, at 10), arguing that uninterrupted availability to Illinois web surfers is enough to grant this court general jurisdiction over defendants. We do not agree. The mere maintenance of an Internet website is generally not sufficient to exercise general jurisdiction (Euromarket Designs, Inc., 96 F.Supp.2d at 833), nor does the plaintiff establish that defendants' activities are so substantial or continuous as to allow this court to exercise jurisdiction generally.

Plaintiff also argues that we have specific jurisdiction over each defendant. Such jurisdiction arises if the defendants have purposefully directed their activities at Illinois residents and the litigation results from injuries arising as a result of those activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471 (1985). To find specific jurisdiction, defendants must have minimum contacts with Illinois to ensure that they will not be forced to litigate here solely as a result of "random," "fortuitous," or "attenuated" contacts with Illinois, or the "unilateral activity of another party or third person." Burger King Corp., 471 U.S. at 475.

Both parties recognize that personal jurisdiction in this case is controlled by the defamation "effects" test set forth in Calder v. Jones, and underscored by the sliding scale Internet analysis set forth in Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F.Supp.1119 (W.D.Pa.1997). The parties, however, disagree as to the interpretation of Calder, and its application to the facts at hand. While plaintiff argues that Calder only requires that defendants' intentional tortious actions caused foreseeable harm to the plaintiff in Illinois (plf's resp. at 12), defendants argue that the allegedly defamatory story was neither focused on or aimed at Illinois, which is "wholly insufficient" under Calder (defs' mot. at 9).

In Calder, the Supreme Court held that a California court had personal jurisdiction

over Florida defendants because of the effects a libelous article had on plaintiff, a professional entertainer living and working in California. The court explained, "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" Calder, 465 U.S. at 788. Thus, we must carefully analyze the facts of these defendants, their relationships to Illinois, and Illinois' interest in the defamation action at hand.

The facts of this case differ from those in Calder. In Calder, "[t]he article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered." Calder, 465 U.S. at 788-89. In this case, the defendants did not contact Illinois sources, did not focus the story on Illinois or any event that occurred in Illinois, and did not know that plaintiff resided in Illinois. Further distinguishing the facts, we note that in Calder, 600,000 out of five million copies of defendant's weekly newspaper were circulated in California, whereas, in this case, only one out of 65,000 print newspaper subscribers and no internet newspaper subscribers resided in Illinois. Additionally, while the plaintiff in Calder, like the plaintiff in this case, had a national reputation, the brunt of her injury was felt in California to an extent not present in this case. Because the entertainment industry of which Calder was a part was centered in California, she experienced the most severe harm in California. In this case, plaintiff's injury to his reputation is national – his sports, business, and professional reputation was both built and still exists in a truly national scope. So while we generally presume that a defamation victim's injury is felt most greatly in his residence (see Rice v. Nova Biomedical Corp., 38 F.3d 909, 916 (7th Cir.1994); Schaefer v. Nash, 149 F.R.D. 583, 585, n4 (N.D.Ill.1993)), that presumption

holds less weight where the plaintiff has a national reputation. *See* Reynolds v. Int'l Amateur Athletic Fed., 23 F.3d 1110, 1120 (6th Cir.1994) (finding minimum contacts lacking where defendant was an international athlete whose professional reputation was not centered in Ohio, and Ohio was not the "focal point" of the press release).

The Seventh Circuit interpreted Calder broadly in Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. P'ship, 34 F.3d 410 (7th Cir.1994), and Janmark, Inc. v. Reidy, 132 F.3d 1200, 1202 (7th Cir.1997). In Indianapolis Colts, the court held that the Canadian defendant was subject to Indiana jurisdiction for trademark infringement where the injury was mainly felt in Indiana, and the only connection defendants had to Indiana was the nationwide broadcast of its games on cable television. The court found that defendant "entered" Indiana through the television broadcast, but left open the question of whether that "addition is indispensable." Indianapolis Colts, 34 F.3d at 412. Similarly, in Janmark, the court upheld jurisdiction over a California defendant, where the defendant's tortious actions induced plaintiff's New Jersey client to revoke its purchase of plaintiff's product. The injury, an essential element of tortious interference with prospective economic advantage, occurred in Illinois, and, therefore, the court found that it was reasonable for defendant to expect to be sued in Illinois. Janmark, 132 F.3d 1200. Even considering the Seventh Circuit's broad reading of Calder, it is clear that this case lacks an important element present in both Indianapolis Colts and Janmark. In those cases, the defendants explicitly directed their torts at the forum state, reasonably foreseeing that the injuries would occur in Indiana and Illinois, respectively. In Indianapolis Colts, infringement on the trademark name "Colts" could only have an effect in Indiana, where the only other team named "Colts" resided. In Janmark, the defendant contacted a New Jersey customer with the express aim of provoking that buyer to

cancel his purchase in Illinois. The only potential injury occurred only in Illinois. Thus, because defendants' tortious actions were directly aimed at the forum state, both defendants could reasonably anticipate (in fact, they could expect) that injury would occur in Indiana or Illinois. And, therefore, they could reasonably anticipate being haled into court there. In this case, even if defendants knew that plaintiff resided in Illinois, personal jurisdiction depends on whether defendants could have reasonably foreseen that Illinois residents would access defendants' website, thus causing plaintiff substantial injury in Illinois. This query requires us to ask whether defendants directed their website at Illinois residents.

Defendants rightly suggest that the internet provides a different context for analyzing personal jurisdiction, pointing to the Seventh Circuit's holding in Jennings v. AC Hydraulic A/S, 383 F.3d 546 (7th Cir. 2004), in which the court found that maintenance of a passive website alone was not sufficient to confer personal jurisdiction on defendant. The Jennings court stated, "Premising personal jurisdiction on the maintenance of a website, without requiring some level of 'interactivity' between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country. ... This scheme would go against the grain of the Supreme Court's jurisprudence which has stressed that although technological advances may alter the analysis of personal jurisdiction, those advances may not eviscerate the constitutional limits on a state's power to exercise jurisdiction over nonresident defendants." 383 F.3d at 550. In reviewing Jennings, it is clear that a finding of injury in a forum state, without something else, is not adequate to confer jurisdiction. In the website arena, that addition is website "interactivity," as distinguished and defined by the court in Zippo, 952 F.Supp.1119.

In Zippo, the court grouped internet cases into three categories, finding that "the

likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." 952 F.Supp. at 1124. First, interactive websites whereby defendants conduct business and elicit sales are enough to grant personal jurisdiction. Second, passive websites that afford internet users no interactivity are not enough to grant personal jurisdiction. Third, interactive websites, whereby a user can exchange information with the host computer, may be sufficient to find personal jurisdiction. *See id.* at 1124-26. *See also* Euromarket Designs, Inc., 96 F.Supp.2d at 838-39. Plaintiff in this case argues that *www.dailybulletin.com* is "extremely interactive" (plf's resp. at 17), while defendants suggest that the website has no interaction with users outside of California (defs' mot. at 12). We agree with defendants and find that website interactivity with non-California residents is *de minimus* at most.

The website *www.dailybulletin.com* is directed at California residents, specifically those in and around Ontario, California. All contact phone numbers are local 909 area code numbers, with no 1-800 number option for those calling long-distance. The news is either local or picked up through the Associated Press. The weather on the home page is local, and one cannot change the location for the weather. Although users can subscribe online for a print newspaper or a free electronic newspaper, not one Illinois resident is currently subscribed to either service (defs' mot. at 4-5). Thus, defendants could not foresee, much less did they target, the transmission of the allegedly defamatory story into Illinois. *Cf.* Zippo, 952 F.Supp. at 1126 (finding personal jurisdiction where defendant "repeatedly and consciously chose to process Pennsylvania residents' applications and to assign them passwords. [Defendant] knew that the result of these contracts would be the transmission of electronic messages into Pennsylvania. The transmission of these files was entirely within its control"). Plaintiff argues

that one can search for Illinois jobs on the website, but fails to note that searching outside of California redirects the user to a separate site, *www.careersite.com*. Posting hyperlinks to websites housing national information is not enough to give us personal jurisdiction over the owners and operators of *www.dailybulletin.com*. *See* <u>Jung v. Assoc. of American Med. Colleges</u>, 300 F.Supp.2d 119, 132, n5 (D.D.C.2005) (distinguishing cases of personal jurisdiction based on defendant's own interactive website accessible to or directed at a forum state from a situation where a third party's website was used); <u>Bensusan Rest. Corp. v. King</u>, 126 F.3d 25, 29 (2d Cir.1997) (finding that a hyperlink to plaintiff's website did not establish a tortious act within the meaning of New York's long-arm jurisdiction statute).

Thus, it is clear that while the website may be interactive for California residents, it does not aim its services at Illinois residents. There was no reason for defendants to foresee that Illinois residents would access their local California website in order to link to a national site, especially when they could have directly accessed the national site, without passing through *www.dailybulletin.com*. The Supreme Court noted that "the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." <u>Burger King Corp.</u>, 471 U.S. at 474. Thus, it is clear that haling defendants into an Illinois court based on an article regarding a local California forum posted on a local California website would offend notions of due process.

Finally, we should address Illinois' interest in adjudicating this suit. *See* <u>World-Wide Volkswagen</u>, 444 U.S. at 292. Although Illinois may have an interest in "providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors," (<u>Burger King Corp.</u>, 471 U.S. at 473), Illinois' interest in adjudicating this suit is not very high. Because

defendants do not target Illinois residents, Illinois does not have regulatory interest in correcting for future wrongs against other Illinois residents. *See* Allan R. Stein, <u>Personal Jurisdiction and the Internet: Seeing Due Process through the Lens of Regulatory Precision</u>, 98 NW. U. L. REV. 411 (arguing that a state's *ex ante* regulatory interest in adjudicating a case should weigh more heavily in personal jurisdiction due process analysis than a state's *ex post* remedial interest). Even if a state's remedial interest is given great weight, because plaintiff pleads injury to his national reputation, Illinois has a lesser interest in adjudicating the suit than it would if plaintiff was only pleading injury to his local Illinois reputation.

After consideration of this case in light of the <u>Calder</u> effects test and the <u>Zippo</u> sliding scale, and pausing for consideration of the state's interest in adjudicating the suit, we find that exercising personal jurisdiction over defendants in this case would offend notions of fair play and substantial justice. Therefore, we grant defendants' motion to dismiss for lack of personal jurisdiction.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss for lack of personal jurisdiction is granted.

JAMES B. MORAN
Senior Judge, U. S. District Court

Oct. 27, 2005.